UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MOBEEN AHMED,**<br><br>Defendant. | **Criminal No.:**<br><br>**Violations:**<br><br>**(Conspiracy)**<br>**18 U.S.C. § 371**<br><br>**(Violation of the International Emergency Economic Powers Act)**<br>**50 U.S.C. § 1705**<br><br>**UNDER SEAL** |

### INFORMATION

### COUNT ONE-Conspiracy

The United States Attorney charges that, at all times relevant to the offense:

### People and Entities

1. An international financial institution ("the Bank") was headquartered in London, United Kingdom, with branch offices around the world including in the United Arab Emirates ("UAE") and in New York, NY. The Bank's branch office in New York provided wholesale banking services, including United States dollar ("USD") clearing services for international wire transactions.

2. Mobeen Ahmed was born in Pakistan and was living in the UAE. Ahmed was employed as a Relationship Manager at the Bank's branch office in Dubai, UAE, from March 2007 through August 2014. Ahmed's responsibilities included fostering and developing banking relationships with the Bank's small- and medium-sized business customers in Dubai, UAE.

3. Person A was employed as a Treasury Sales Manager at the Bank's Dubai branch from 2008 through 2014. Person A's job responsibilities included managing foreign currency

sales for small- and medium-sized business customers, including USD currency sales.

4. Person B was an Iranian national who controlled two business organizations in the UAE that were customers of the Bank's Dubai branch. Business Organization #1 was a customer of the Bank's Dubai branch from approximately December 2006 through February 2011. Business Organization #2 was a customer of the Bank's Dubai branch from approximately February 2011 through August 2011.

5. Person C was an Iranian national who controlled at least four business organizations in the UAE that were customers of the Bank's Dubai branch. Business Organization #3 was a customer of the Bank's Dubai branch from approximately December 2009 through January 2011. Business Organization #4 was a customer of the Bank's Dubai branch from approximately December 2010 through April 2011. Business Organization #5 was a customer of the Bank's Dubai branch from approximately January 2011 through September 2011. Business Organization #6 was a customer of the Bank's Dubai branch from approximately September 2011 through December 2011.

6. Persons D, E, and F were Turkish nationals who controlled two business organizations in the UAE that were customers of the Bank's Dubai branch. Business Organization #7 was a customer of the Bank's Dubai branch from approximately October 2009 through October 2011. Business Organization #8 was a customer of the Bank's Dubai branch from approximately April 2011 through August 2011.

### The Iranian Sanctions

7. The International Emergency Economic Powers Act, Sections 1701 to 1706 of Title 50 of the United States Code ("IEEPA"), grants to the President of the United States a broad spectrum of powers necessary to "deal with any unusual and extraordinary threat, which has its

source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." Title 50, United States Code, Section 1701(a).

8. The President exercises these IEEPA powers through Executive Orders that impose economic sanctions to address particular emergencies and delegate IEEPA powers for the administration of those sanctions programs. On March 15, 1995, President Clinton issued Executive Order No. 12957, finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States," and declaring "a national emergency to deal with that threat." President Clinton followed this with Executive Order No. 12959, issued on May 6, 1995, which imposed comprehensive trade and financial sanctions on Iran. These sanctions prohibit, among other things, the exportation, re-exportation, sale, or supply, directly or indirectly, to Iran or the Government of Iran of any goods, technology, or services from the U.S. or U.S. persons, wherever located. This includes persons in a third country with knowledge or reason to know that such goods, technology, or services are intended specifically for supply, transshipment, or re-exportation, directly or indirectly, to Iran or the Government of Iran. On August 19, 1997, President Clinton issued Executive Order No. 13059, consolidating and clarifying Executive Order Nos. 12957 and 12959 (collectively, the "Executive Orders"). The most recent continuation of this national emergency was executed on January 13, 2017. 82 Fed. Reg. 6187 (Jan. 13, 2017).

9. The Executive Orders authorized the U.S. Secretary of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions and Sanctions Regulations ("ITRs"), 31 C.F.R. Part 560, implementing the sanctions imposed by the Executive Orders. With

the exception of certain exempt transactions, the ITRs prohibit, among other things, U.S. depository institutions from servicing Iranian accounts and directly crediting or debiting Iranian accounts, without a specific license from the Office of Foreign Assets Control ("OFAC"). The ITSRs also prohibit unlicensed transactions by any U.S. person who evades or avoids, has the purpose of evading or avoiding, or attempts to evade or avoid the restrictions imposed under the ITSRs.

10. At all times relevant to this Information, OFAC was located in the District of Columbia.

**The Conspiracy**

11. Between in or about 2007 and in or about 2011, in the District of Columbia and elsewhere, Mobeen Ahmed, the defendant, did knowingly and willfully combine, conspire, confederate, and agree with numerous persons, including Persons A-F and Business Organizations #1-8, and other individuals and business organizations known and unknown to the United States, to commit offenses against the United States, and to defraud the United States, more particularly by:

    a. causing financial services to be exported without authorization or a license from the United States to Iran, and persons and entities resident and operating in Iran, in violation of the International Emergency Economic Powers Act, Title 50, United States Code, Section 1705 ("IEEPA"); and

    b. defrauding the United States, including the Department of the Treasury, by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations prohibiting the export or supply of financial services from the United States to Iran, without authorization or a license, by deceit, craft, trickery, and dishonest

means, in violation of Title 18, United States Code, Section 371.

12. Conduct alleged in this Information occurred within the District of Columbia and elsewhere, and therefore within the venue of the United States District Court for the District of Columbia pursuant to Title 18, United States Code, Section 3237(a). Additionally, conduct alleged in this Information began outside the jurisdiction of any particular state or district of the United States, but within the jurisdiction of the United States generally and, therefore, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia.

13. In furtherance of the above-described conspiracy, and in order to carry out the objects thereof, defendant Ahmed and others committed or caused to be committed, in the District of Columbia and elsewhere, the following overt acts, among others:

    a. Between in or about November 2007 and December 2011, defendant Ahmed and Person A knowingly and willfully facilitated hundreds of transactions totaling millions of dollars on behalf of the Bank's business customers of the Dubai branch, knowing that those business customers (including Business Organizations #1-8, controlled by Persons B, C, D, E, and F) were operating from Iran and/or doing USD business with Iranian entities, without a license from OFAC.

    b. Between in or about November 2007 and February 2011, defendant Ahmed worked as the Relationship Manager for Business Organization #1, operated by Person B. Between in or about March 2011 and August 2011, defendant Ahmed worked as the Relationship Manager for Business Organization #2, operated by Person B. Person A helped facilitate foreign exchange transactions for Business Organizations #1-2, including in USD. Both defendant Ahmed and Person A helped Person B manage the accounts of

Business Organizations #1-2 and conduct foreign exchange transactions in USD that cleared through the United States.   Defendant Ahmed and Person A both knew that Person B operated from Iran and/or conducted USD transactions with Iranian persons or entities, and that Business Organizations #1-2 transacted USD business with Iranian entities. Business Organizations #1-2 conducted approximately $245 million in USD transactions through their accounts at the Bank's Dubai branch.

      c.      Between in or about November 2007 and August 2011, defendant Ahmed and Person A instructed Person B on how to structure financial transactions in ways that would not cause the Bank to suspect that the transactions violated United States laws, including IEEPA.

      d.      Between in or about November 2007 and August 2011, defendant Ahmed and Person A misled Bank compliance officials about ties that Person B and Business Organizations #1-2 had to Iran.

      e.      Between in or about March 2011 and August 2011, defendant Ahmed and Person A knew that Business Organization #1's account with the Bank had been closed due to potential IEEPA violations, including Person B conducting transactions while resident in Iran or conducting USD transactions with Iranian persons or entities, but continued providing services to Person B and Business Organization #2 without disclosing to Bank compliance officials that Business Organization #2 was operated by Person B.

      f.      Between in or about December 2009 and December 2011, defendant Ahmed worked as the Relationship Manager for Business Organizations #3-6, operated by Person C.   Person A helped facilitate foreign exchange transactions for Business Organizations #3-6, including in USD.   Both defendant Ahmed and Person A helped

Person C manage the accounts of Business Organizations #3-6 and conduct foreign exchange transactions in USD that cleared through the United States. Defendant Ahmed and Person A both knew that Person C and Business Organizations #3-6 transacted USD business with Iranian entities. Business Organizations #3-6 conducted approximately $312 million in USD transactions through their accounts at the Bank's Dubai branch.

      g.      Between in or about December 2009 and December 2011, defendant Ahmed and Person A instructed Person C on how to structure financial transactions in ways that would not cause the Bank to suspect that the transactions violated United States laws, including IEEPA.

      h.      Between in or about December 2009 and December 2011, defendant Ahmed and Person A misled Bank compliance officials about ties that Person C and Business Organizations #3-6 had to Iran.

      i.      Between in or about January 2011 and December 2011, defendant Ahmed and Person A knew that some of Person C's business organization accounts with the Bank had been closed due to potential IEEPA violations, but continued providing services to Person C and his other business organizations without disclosing to Bank compliance officials the connections between Person C and any other active account.

      j.      Between in or about October 2009 and October 2011, defendant Ahmed worked as the Relationship Manager for Business Organizations #7-8, operated by Persons D, E, and F. Person A helped facilitate foreign exchange transactions for Business Organizations #7-8, including in USD. Both defendant Ahmed and Person A helped Persons D, E, and F manage the accounts of Business Organizations #7-8 and conduct foreign exchange transactions in USD that cleared through the United States. Defendant

Ahmed and Person A both knew that Business Organizations #7-8 transacted USD business with Iranian entities. Business Organizations #7-8 conducted approximately $417 million in USD transactions through their accounts at the Bank's Dubai branch.

k. Between in or about October 2009 and October 2011, defendant Ahmed and Person A instructed Persons D, E, and F on how to structure financial transactions in ways that would not cause the Bank to suspect that the transactions violated United States laws, including IEEPA.

l. Between in or about October 2009 and October 2011, defendant Ahmed withheld from Bank compliance officials information about ties that Business Organizations #7-8 had to Iran.

m. Between November 2007 and December 2011, defendant Ahmed engaged in this conduct in order to generate revenue for the Bank and maintain his employment.

n. A license from OFAC was required for at least some of the USD transactions conducted by Business Organizations #1-8, but a license was neither sought nor obtained.

(**Conspiracy to Unlawfully Export U.S. Goods and Technology to Iran and to Defraud the United States**, in violation of Title 18, United States Code, Section 371; Title 50, United States Code, Section 1705)

        JESSIE K. LIU
        UNITED STATES ATTORNEY
        D.C. Bar No. 472845

By:         /s/
        Michael Friedman
        N.Y. Bar No. 4297461
        Peter C. Lallas
        N.Y. Bar No. 4290623
        Assistant United States Attorneys
        555 4th Street NW

Washington, D.C. 20530
(202) 252-6765 (Friedman)
(202) 252-6879 (Lallas)

KENNETH A. BLANCO
ACTING ASSISTANT ATTORNEY GENERAL

By: _____/s/_____
Jennifer Wine
Trial Attorney
D.C. Bar No. 976005
Money Laundering and Asset Recovery Section
1400 New York Avenue NW
Washington, DC 20005
(202) 616-2595

9