**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 17-CR-190 (JEB)** |
| v. | : | |
| | : | |
| **MOBEEN AHMED,** | : | |
| | : | |
| Defendant. | : | **UNDER SEAL** |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America respectfully submits this memorandum in aid of sentencing.

**BACKGROUND**

Defendant Mobeen Ahmed was charged by information on October 12, 2017, with one count of conspiracy to commit an offense against and to defraud the United States, and to violate the International Emergency Economic Powers Act (50 U.S.C. § 1705) ("IEEPA") and the Iranian Transactions Regulations (31 C.F.R. Part 560) ("ITRs"), all in violation of 18 U.S.C. § 371. On October 26, 2017, the defendant pleaded guilty to the information. Sentencing is scheduled for July 29, 2022.[1]

At the plea hearing, the defendant admitted that from 2007 through 2011, he conspired with other people and entities to circumvent United States financial sanctions against Iran by causing financial services to be exported from the United States to Iran without a license. (October 26, 2017, Statement of Offense ("SOF") at 4.) During that time period, the defendant

---

[1] On July 27, 2022, the defendant is scheduled to be sentenced in the New York Supreme Court in Case Number 2017NY055688 (under seal). The defendant pleaded guilty in that case on October 27, 2017, to falsifying business records (in violation of NY PL § 175.10) and to conspiracy in the fifth degree (in violation of NY PL § 105.05(1)), encompassing largely the same conduct at issue in this federal criminal case. We anticipate that the New York case will be unsealed on or around July 29, 2022.

1

was employed as a Relationship Manager in the United Arab Emirates ("UAE") by Standard Chartered Bank ("the Bank" or "SCB"), headquartered in London.  (SOF at 1.)[2]  The Bank had a branch office in New York that provided United States dollar clearing services for international wire transactions.  (*Id*.)

The defendant's job responsibilities at the Bank included fostering and developing banking relationships with the Bank's small-and medium-size business customers in the area of Dubai. (*Id*.)  The defendant managed the Bank's relationships with UAE businesses including several operated by an Iranian national named Mahmoud Reza Elyassi, who conducted U.S. dollar transactions through the business accounts at the Bank.[3]  Another employee of the Bank (referred to in the SOF as "Person A") worked with some of the same customers as a Treasury Sales Manager who managed the sale of foreign currencies.  (*Id*. at 1, 5.)  The defendant knew that Elyassi's businesses were legally located in the UAE but were covertly operated from Iran, and that Elyassi used the business accounts at the Bank to facilitate business in U.S. dollars with Iranian

---

[2]  On April 9, 2019, the United States filed a superseding information in Case No. 12-cr-262 charging the Bank with two violations of 18 U.S.C. § 371 (conspiracy to commit offenses against and to defraud the United States, and to violate IEEPA and the ITSRs), the latter of which encompassed the defendant's conduct as SCB's employee and agent from 2007 through 2011.  Also on April 9, 2019, the United States and the Bank entered an Amended Deferred Prosecution Agreement, in which the Bank agreed to: (a) fully cooperate in related government investigations; (b) disclose evidence or allegations of violations of U.S. economic sanctions laws and regulations; (c) continue to implement a compliance program designed to prevent and detect violations of U.S. economic sanctions laws and regulations; and (d) forfeit to the United States $240 million, and pay an additional monetary penalty of $480 million. (Case No. 12-cr-262, Dkt No. 16 at 4-5.)  That same day, the Bank entered into separate agreements with the New York County District Attorney's Office, the U.S. Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System, the New York State Department of Financial Services, and the United Kingdom's Financial Conduct Authority, and agreed to pay additional financial penalties of more than $477 million. (*See* Department of Justice Press Release, https://www.justice.gov/opa/pr/standard-chartered-bank-admits-illegally-processing-transactions-violation-iranian-sanctions.)  The United States agreed to defer prosecution of the Bank's misconduct for two years.  (Case No. 12-cr-262, Dkt No. 16 at 5)   On April 9, 2021, the United States moved to dismiss the information with prejudice, having determined that the Bank complied with its obligations under the Amended Deferred Prosecution Agreement.  (Case No. 12-cr-262, Dkt No. 19.)

[3]  On April 9, 2019, a two-count criminal indictment, charging Elyassi with participating in the conspiracy, was ordered unsealed.   A warrant for Elyassi's arrest remains unexecuted.

entities.   (*Id*. at 4.)

The defendant counseled Elyassi and others on ways to structure financial transactions that would not cause the Bank to suspect that the transactions would benefit Iran and thereby violate U.S. sanction laws.   (SOF at 5-6.)   For example, the defendant told Elyassi that his businesses could avoid scrutiny if they sent payments only to other business accounts, rather than to bank accounts used by individuals.   The defendant suggested to Elyassi that his compatriots should use only their personal bank accounts to send payments to other individuals.   The defendant counseled other Iran-connected business customers of the Bank to route funds from Iranian banks through another UAE financial institution before depositing the funds at the Bank, thereby obscuring the Iranian origin of the funds.   (*Id*. at 5.)

The defendant also provided false and misleading information to officials at the Bank to disguise known ties to Iran by Elyassi and by the operators of other business accounts at the Bank. (SOF at 6-7.)   For example, the defendant falsely stated in response to a compliance inquiry from the Bank that Elyassi's businesses had no branches outside the UAE, when the defendant knew that the business currently or formerly had a factory in Iran.   The defendant falsely stated on an internal Bank customer due diligence form that there were no sanctions concerns associated with the UAE businesses operated by Elyassi.   (SOF at 6-7.)

Perhaps most serious, the defendant facilitated access to the Bank by Elyassi (and other operators of Iran-connected UAE business accounts) even after Bank compliance officials had shut down a business account operated by Elyassi due to Iran sanctions concerns.   (SOF at 7-8.)   The defendant (working with Person A) did this by helping to provide United States dollar banking services through newly-opened accounts for a UAE business organization that the defendant knew (but did not disclose to Bank compliance staff) was operated by Elyassi.   The defendant knew

3

about, but did not disclose to compliance staff, the connections between the prior business account and the newly-opened business account.   (SOF at 7-8.)

Throughout all of this conduct, the defendant knew that his conduct would result in the Bank's New York Branch processing U.S. dollar transactions in violation of the law.   (SOF at 8.) Indeed, Elyassi's Iran-connected UAE businesses conducted hundreds of prohibited financial transactions totaling millions of U.S. dollars.   (*Id*. at 4.)[4]   The defendant engaged in the misconduct willfully and with knowledge that it was in violation of the law; he did so to generate revenue for the Bank and to maintain his employment.   (SOF at 8.)

## SENTENCING ANALYSIS

### I.      Statutory Penalties

The statutory maximum penalty for a violation of 18 U.S.C. § 371 includes up to five years of imprisonment; a fine of up to $250,000 or twice the pecuniary gain or loss of the offense pursuant to 18 U.S.C. § 3571; and a term of supervised release of up to three years pursuant to 18 U.S.C. § 3583(b)(2).   A term of probation of not less than one year nor more than five years is authorized under 18 U.S.C. § 3561(c)(1).

### II.      Application of the Sentencing Guidelines

The Sentencing Guidelines provide advisory recommendations which the courts "must consult . . . and take . . . into account when sentencing," *United States v. Booker*, 543 U.S. 220, 264 (2005), a criminal defendant for violations of the United States Code.   As the Supreme Court has explained, "[a]s a matter of administration and to secure nationwide consistency, the

---

[4]  As described in the Supplemental Factual Statement attached to the Amended Deferred Prosecution with the Bank (Case No 12-cr-262, Dkt No. 16-1 at 84), the Bank processed approximately 9,500 United States dollar transactions from November 2007 through August 2011, totaling approximately $240 million, on behalf of the two UAE business organizations operated by Elyassi.

Sentencing Guidelines should be the starting point and the initial benchmark" for determining the appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

The parties agreed at the plea hearing that the following Sentencing Guidelines sections apply.  First, the base offense level under U.S.S.G. § 2M5.1(a)(1) is 26.  Second, three points should be deducted for acceptance of responsibility under U.S.S.G. § 3E1.1, for a total Estimated Offense Level of 23.

The parties also agreed that the defendant has no prior criminal convictions, and an estimated Criminal History Category of I.

The parties agreed that the Estimated Guidelines Range is 46-57 months of imprisonment and that the estimated applicable fine range is $10,000 to $100,000.

### III.    Statutory Sentencing Factors

As noted above, determining the recommended sentencing range under the U.S.S.G. is the first of two required steps for sentencing under the United States Code.   The second step requires the court to consider that range, to consider other relevant factors set forth in the guidelines, and to consider the factors set forth in 18 U.S.C. § 3553(a).  *See, e.g., United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).   These factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and provides the defendant with needed educational or vocational training and medical care; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records convicted of similar conduct.

### 1.   Nature and Circumstances of the Offenses

The defendant committed a serious federal criminal offense by conspiring to circumvent

United States sanctions against Iran, which were implemented to combat the "unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" caused by the Iranian regime.  (SOF at 3.)   The sanctions laws were designed to protect the national security of the United States and to safeguard the U.S. economy, and as a tool of our foreign policy influence Iran's malign conduct.   The defendant undermined all of that through his criminal conduct, which interfered with the enforcement of U.S. sanctions laws and regulations. The damage was significant, as the UAE business organizations that Elyassi operated engaged in approximately $240 million worth of transactions using their accounts at the Bank.   The defendant's criminal conduct was not a single event.   It occurred repeatedly over a period of several years and involved deceit and evasion.

### 2.   History and Characteristics of the Offender

The defendant has no prior arrests and no criminal convictions.   He has been continuously employed at financial institutions for around the past 20 years.   He has a college education, and he obtained an advanced certificate in the field of banking and finance.   The defendant appears to have family support both in the United States and in his home country; he has been married for more than 10 years and has a young child.   The defendant accepted responsibility for his conduct by pleading guilty.[5]

### 3.   Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public

The sentence should send a message to the defendant and the public that efforts to violate the U.S. sanctions regime will not be tolerated, regardless of where in the world the offender is located.   The sentence must also adequately punish the defendant for his offense.   In the

---

[5]  We intend to present additional information regarding the defendant's history and characteristics under seal.

circumstances of this case, and considering the totality of the circumstances, imposition of a sentence consistent with the provisions of the United States Sentencing Guidelines and § 3553(a) will accomplish these sentencing goals, deter future misconduct, and protect the public.

### 4.  Educational or Vocational Training or Medical Care

The defendant does not appear to require transitional services.

### 5.  Need to Avoid Unwarranted Sentencing Disparities

The starting point in the Court's analysis under § 3553(a)(6) should be to consider the sentences of "defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).   Sentences imposed in this district in cases involving violations of U.S. sanctions on Iran and other export violations have varied greatly, with most sentences imposed including a term of imprisonment below the Sentencing Guidelines range.   Some sentences in such cases include the following:

> Cho Yan Nathan Man, 19-cr-218 (J. Huvelle) (violation of 22 U.S.C. § 2278, unlawful exports) -- sentenced to time-served of around 11 months of imprisonment, no term of supervised release.
>
> Beng Sun Koh, 19-cr-002 (J. Contreras) (violation of 18 U.S.C. § 371, conspiracy to defraud the United States and Violate IEEPA) -- sentenced to 18 months of imprisonment, 12 months of supervised release.
>
> Majid Ghorbani, 18-cr-255 (J. Friedman) (violation of 50 U.S.C. § 1705, IEEPA) -- sentenced to 30 months of imprisonment, 36 months of supervised release (later reduced to time-served in response to motion for compassionate release in early days of the global pandemic).
>
> Apichart Srivaranon, 17-cr-167 (J. Walton) (violation of 18 U.S.C. § 371, conspiracy to defraud the United States) -- sentenced to 26 months of imprisonment, no term of supervised release.
>
> Arzu Sagsoz, 16-cr-179 (J. Walton) (violation of 18 U.S.C. § 371, conspiracy to defraud the United States and to violate IEEPA) -- sentenced to 20 months of imprisonment, one year of supervised release.

Arash Sepehri, 16-cr-081 (J. Collyer) (violation of 18 U.S.C. § 371, conspiracy to defraud the United States and to violate IEEPA) -- sentenced to 25 months of imprisonment, no term of supervised release.

Justin Gage Jangraw, 14-cr-174 (J. Boasberg) (violation of 22 U.S.C. § 2778, unlawful export of defense articles) -- sentenced to 8 months of imprisonment, 12 months of supervised release.

Preerayuth Burden, 14-cr-069 (J. Collyer) (violations of 18 U.S.C. § 371 and 22 U.S.C. § 2778, International Traffic in Arms Regulations) -- sentenced to 55 months of imprisonment, 36 months of supervised release (found guilty after trial) (conviction vacated on appeal, after which parties entered deferred prosecution agreement with cooperation requirement).

Kitibordee Yindeear-Rom, 14-cr-069 (J. Collyer) (violation of 18 U.S.C. § 371, conspiracy to defraud the United States and to violate the AECA and the ITAR) -- sentenced to 36 months of imprisonment and three years of supervised release pursuant to Rule 11(c)(1)(C) plea agreement (sentence later reduced to time served for substantial assistance under Federal Rule of Criminal Procedure 35(b)).

Christopher M. Gray, 13-cr-107 (J. Kollar-Kotelly) (violation of 22 U.S.C. § 2778, unlawful export of defense articles) -- sentenced to 36 months of imprisonment, 24 months of supervised release.

David Levick, 12-cr-52 (J. Boasberg) (violation of 50 U.S.C. § 1705, unlawful exports to embargoed country) – sentenced to 24 months of imprisonment, one year of supervised release.

Arsalan Shemirani, 12-cr-75 (J. Leon) (violation of 18 U.S.C. § 371, conspiracy to defraud the United States and to violate IEEPA) – sentenced to 48 months of imprisonment, 36 months of supervised release (court denied government's request for three-point downward departure for substantial assistance under U.S.S.G. 5K1.1).

Hossein Ali Khoshnevisrad, 09-cr-165 (PLF) (violation of 50 U.S.C. § 1705, conspiracy to export to embargoed country) – sentenced to 15 months of imprisonment, 36 months of supervised release.

Robert Niels Kraaipoel, 09-cr-219 (PLF) (violation of 18 U.S.C. § 371, conspiracy to defraud the United States and to violate IEEPA) – sentenced to 60 months of probation (government moved for downward departure in light of substantial assistance to law enforcement that resulted in at least two arrests and convictions, and requested a sentence of 60 months of probation).

Robert Kraaipoel, 09-cr-220 (PLF) (violation of 18 U.S.C. § 371, conspiracy to

8

defraud the United States and to violate IEEPA) – sentenced to 60 months of probation (government moved for downward departure in light of substantial assistance to law enforcement that resulted in at least two arrests and convictions, and requested a sentence of 60 months of probation).

The defendant here did not cause military items or dual-use goods to be exported outside the United States unlike several of the defendants in the cases listed above, but also unlike these other cases the defendant caused around $240 million worth of financial services to be exported to Iran.

## CONCLUSION

For these reasons, and any others submitted prior to imposition of sentence, the United States respectfully urges the Court to impose a sentence consistent with the provisions of the United States Sentencing Guidelines and 18 U.S.C. § 3553(a).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:       /s/
          Michael J. Friedman
          N.Y. Bar 4297461
          Assistant U.S. Attorney
          United States Attorney's Office
          601 D St., NW
          Washington, D.C. 20530
          202-252-6765
          Michael.Friedman@usdoj.gov

KENNETH A. POLITE, JR.
ASSISTANT ATTORNEY GENERAL

DEBORAH L. CONNOR
Chief, Money Laundering and
Asset Recovery Section,
Criminal Division
United States Department of Justice

By: _____/s/_____

Margaret A. Moeser
Deputy Chief, Bank Integrity Unit
California Bar No. 253177
1400 New York Ave., NW
Washington, DC 20005
(202) 598-2345